UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RHONDA P. LEY,

                             Petitioner,

      v.

ROCHESTER REGIONAL JOINT BOARD,
LOCAL 14A,

                         Respondent.

_____

**DECISION AND ORDER**

14-CV-6605 EAW

## I.    INTRODUCTION

Petitioner, Rhonda P. Ley, ("Petitioner") Regional Director of the Third Region of the National Labor Relations Board ("Board"), brings this petition pursuant to Section 10(l) of the National Labor Relations Act ("the Act"), 29 U.S.C. § 160(l), seeking to preliminarily enjoin Respondent Rochester Regional Joint Board, Local 14A ("Union") from engaging in alleged unfair labor practices in violation of Sections 8(b)(4)(ii)(A) and (B), as well as Section 8(e) of the Act. (Dkt. 15).

Petitioner claims that Article XXII of the collective bargaining agreement ("CBA") between the Union and the Employer, Xerox Corporation ("Employer"), constitutes a "union signatory" agreement in violation of the Act, and that the Union's continued attempts to enforce Article XXII constitute additional violations of the Act. The Union maintains that Article XXII is a lawful work preservation provision and seeks to pursue arbitration to examine Article XXII in accordance with the terms of the CBA.

For the reasons set forth below, the Court finds that Petitioner has demonstrated that there is reasonable cause to believe that the Union is violating the Act, and that a preliminary injunction enjoining the Union from seeking to enforce Article XXII pending the Board's final adjudication of the matter is just and proper.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

The Union and the Employer have been parties to a CBA for at least 25 years. (Dkt. 16 at 2).  The most recent version of the CBA is effective June 2, 2014 through June 1, 2018.  (Dkt. 15 at 4).  The Employer and Jones Lang Lasalle America, Inc. ("JLL") are parties to a separate agreement whereby JLL manages and administers the Employer's real estate, and have been parties to such an agreement since approximately 2008. (Dkt. 13-2 at 3).  On or about November 1, 2012, JLL and the Employer entered into the current version of this real estate agreement.  (*Id.*).

According to the Employer, in April 2014, it informed the Union that it intended to seek to subcontract certain work to JLL later in the year. (*Id.*).

On July 24, 2014, JLL representative David Nappi and Employer representative Linda Kelly met with the Union's business representative Roger LaDue.  (*Id.*).  At this meeting, Ms. Kelly alleges that she informed Mr. LaDue of the specific tasks that the Employer intended to contract to JLL, and Mr. LaDue told Ms. Kelly that subcontracting this work would violate Article IIB of the CBA.  (*Id.* at 4).

On July 28, 2014, Mr. Nappi and Ms. Kelly met with the Union's representative Gary Bonadonna to discuss the subcontracting plans.  (*Id.*).  According to Ms. Kelly, Mr. Bonadonna stated that contracting this work would violate Article IIB of the CBA.  (*Id.*).

According to Ms. Kelly, on August 12, 2014, the Employer decided to keep some of the work in-house that it had intended to subcontract, but still intended to subcontract work to JLL. (*Id.*).

On August 21, 2014, the Union filed a grievance against the Employer, claiming that the Employer violated Article XXII of the CBA by subcontracting facilities work. (*Id.* at 4, 9).

On September 3, 2014, the Employer and the Union met to discuss the grievance, and according to Ms. Kelly, Mr. LaDue indicated that he wanted a written confirmation from JLL that it would honor the Union contract, pursuant to Article XXII of the CBA. (*Id.* at 4).

The Employer filed a complaint with the Board alleging that the Union was engaging in unfair labor practices under the Act and Petitioner, as Regional Director, investigated the claims against the Union. (Dkt. 13-3 at ¶ 3).

Upon investigation, Petitioner determined that there was "reasonable cause to believe that [the Union] has violated the Act by seeking to enforce an unlawful agreement," and that, "unless enjoined, [the Union] will continue to seek to enforce the unlawful agreement." (*Id.* at ¶¶ 3-4).

On October 16, 2014, Petitioner filed a petition with this Court seeking a preliminary injunction enjoining the Union from giving force and effect to Article XXII of the CBA through pursuit of the grievance by arbitration. (Dkt. 1). Petitioner also filed a motion on that date to expedite the matter. (Dkt. 2).

On October 27, 2014, the Union filed a separate, but related, lawsuit with this Court under case number 14-CV-6607 against the Employer, and filed a motion for a preliminary injunction to compel the Employer to participate in arbitration of the Union's grievance and to enjoin the Employer from subcontracting work to JLL pending the decision of the arbitrator.  The Union also filed a motion for an expedited hearing of the matter.

On October 29, 2014, this Court issued an order granting Petitioner's motion for an expedited hearing and scheduled a hearing for November 17, 2014, before the undersigned.  (Dkt. 7).  On the same date, the Court issued an order granting the Union's motion for an expedited hearing in case number 14-CV-6607, to be heard on November 17, 2014, before the undersigned.

On November 5, 2014, Petitioner filed an amended petition, adding claims that the Union's lawsuit against the Employer further violated the Act.  (Dkt. 15).

The subcontracting agreement between the Employer and JLL is scheduled to take effect November 18, 2014.  (Dkt. 13-2 at 6).  According to Mr. Nappi, pursuant to this agreement, while the Employer would control the work to be performed, JLL would determine the employees who perform the work.  (*Id.* at 7).

## III.   DISCUSSION

### A.   Standard of Review

Section 10(l) provides that, once a complaint of a Section 8(e) violation has been brought to the Board, the Regional Director conducts a preliminary investigation and determines if there is reasonable cause to believe that the Union is engaging in unfair

- 4 -

labor practices under the Act.  29 U.S.C. § 160(l).  If the Regional Director finds that the Union is engaging in unfair labor practices, he or she is required to petition the district court for injunctive relief pending "final adjudication" of the matter by the Board.  *Id.* Such a petition is currently before the Court.

When considering a Section 10(l) request for injunctive relief, the Court examines: (1) whether there is "reasonable cause to believe" that the Union violated the Act, and (2) whether injunctive relief is "just and proper."  *Silverman v. Local 78, Asbestos, Lead & Hazardous Waste Laborers*, 958 F. Supp. 129, 133 (S.D.N.Y. 1996) (citing *Kaynard v. Palby Lingerie, Inc.*, 625 F.2d 1047 (2d Cir. 1980)).

"In a proceeding under Section 10(l) for injunctive relief, the court is not called upon to decide whether an unfair labor practice has been committed.  The ultimate determination of the merits is reserved exclusively to the Board, subject to review by the Court of Appeals pursuant to Sections 10(e) and (f) of the NLRA."  *Blyer v. Staten Island Cable LLC*, 261 F. Supp. 2d 168, 170 (E.D.N.Y. 2003); *see also Danielson v. Int'l Org. of Masters, Mates & Pilots, AFL-CIO*, 521 F.2d 747, 751 (2d Cir. 1975) ("In determining whether an injunction under Section 10(l) should issue, it is well settled that the district court need not decide that an unfair labor practice has actually occurred but merely must decide whether the Board has a reasonable cause to believe there has been a violation of the Act.").  "The Board, rather than the district courts, remains the primary fact finder and primary interpreter of the statutory scheme."  *McLeod v. Nat'l Maritime Union*, 457 F.2d 490, 494 (2d Cir. 1972).

B.     **Reasonable Cause**

Petitioner claims that Article XXII of the CBA is a union signatory agreement in violation of Section 8(e) of the Act. (Dkt. 13-4 at 6). Petitioner also argues that the Union's attempts to enforce Article XXII constitute further violations of the Act. (*Id.* at 4). The Union argues that Article XXII is intentionally overbroad and ambiguous, but is intended to be a permissible work preservation provision. (Dkt. 16 at 11-16). Therefore, the Union argues, arbitration of the grievance is required to adhere to the terms of the CBA and determine the extent to which Article XXII is enforceable. (*Id.* at 16-18).

Section 8(e) provides in relevant part, that:

> It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or otherwise dealing in any of the products of any other employer, or cease doing business with any other person, and any other contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void. . . .

29 U.S.C. § 158(e).

"The purpose of Section 8(e) is to prohibit agreements that concern a secondary, as opposed to a primary or contracting employer. However, it does not prohibit all union and employer agreements that may have the secondary effect of a cessation of business with other employers. For example, clauses that contain language that could be viewed as violating Section 8(e) are not prohibited if they have the primary objective of preserving work performed by the contracting employer's employees." *Blyer*, 261 F. Supp. 2d at 171.

Although the Union argues that Article XXII has the primary objective of preserving work, the provision makes no reference to wage or work preservation.  Article XXII states, in part:

> There shall be no Transfer of Business unless at least sixty (60) days prior to the effective date of such Transfer of Business the Company has delivered to the Manager of the Rochester Joint Board <u>a binding written commitment by the Transferee to assume all of the Company's obligations under this Agreement</u>.  In addition, the Company agrees that during said sixty (60) day period immediately preceding such a transfer, it shall meet at reasonable times, for the purpose of negotiating with the Union all issues concerning the effects of the Company's decision to transfer its operations.

(Dkt. 13-2 at 15 (emphasis added)).

"Of course '[t]he Board is free to render whatever decision it deems proper in the unfair labor practice proceeding, and to give this opinion whatever weight it chooses. . . .'"  *Danielson*, 521 F.2d at 756 (quoting *Danielson v. Joint Bd.*, 494 F.2d 1230, 1245 (2d Cir. 1974)).  However, in order to determine whether Petitioner has demonstrated reasonable cause to believe that the Union is engaging in behavior in violation of the Act, the Court must necessarily engage in some analysis of the merits of Petitioner's assertions.

Under the present circumstances, the language of Article XXII plainly has a secondary effect of requiring JLL, a non-contracting party, to sign "a binding written commitment" agreeing to "assume all of the Company's obligations" under the CBA.

In determining whether a CBA provision has a primary or secondary effect, the question is "whether, under all the surrounding circumstances, the Union's objective was preservation of work for employees, or whether the agreements . . . were tactically

- 7 -

calculated to satisfy union objectives elsewhere." *Nat'l Woodwork Manufs. Assoc. v. NLRB*, 386 U.S. 612, 644 (1967). "The Board has consistently held that when so-called 'standards clauses' have been alleged to violate Section 8(e), that these clauses, which in effect limit (prohibit) the employer from subcontracting with certain other employers, constitute an agreement whereby such employer agrees to cease or refrain from doing business with any other person, and as such, a violation of Section 8(e)." *McLeod v. Am. Fed. of Television & Radio Artists*, 234 F. Supp. 832, 836 (S.D.N.Y. 1964), *aff'd*, 351 F.2d 310 (2d Cir. 1965). "Contract clauses that dictate the labor policies of non-signatories have long been found to have a secondary rather than primary work preservation objective and thus fall within the general proscription of Section 8(e) of the NLRA." *Blyer*, 261 F. Supp. 2d at 172.

Here, the Union seeks to use Article XXII to influence the labor relations of a secondary employer. This is an improper objective. *See Danielson,* 521 F.2d at 752; *see also Retail Clerks Union Local 324*, 235 NLRB No. 69, 1978 WL 7435, at *3 (Apr. 6, 1978) (NLRB found that a clause in a CBA requiring the employer to provide the Union with written evidence that a third party had assumed all of the obligations under the CBA in effect required some form of a legally binding document to be signed by the third party, which went "beyond lawful union standards or work preservation objectives" and had the same effect as a union signatory clause, prohibited by Section 8(e) of the Act.).

The Union asks the Court to engage in an exercise in contract interpretation, arguing that Article XXII is ambiguous, and that therefore the Court should consider the drafter intent behind the Article. (Dkt. 16 at 13-15). The Court does not find Article

XXII ambiguous.  If the drafters wanted Article XXII to apply as a work preservation clause, "[the drafters] could have agreed to prohibit subcontracting completely in the CBA, or they could have agreed to limit subcontracting to those companies whose terms and conditions matched the economic terms and conditions of the CBA." *Blyer*, 261 F. Supp. 2d at 172.  As drafted, the plain language of the document contains no such provision, but rather, requires a non-signatory to agree in writing to adopt all of the Employer's responsibilities under the CBA.

Petitioner argues that the Union's grievance, pursuit of arbitration, and lawsuit in this Court constitute violations of Sections 8(b)(4)(ii)(A) and (B).  Under these sections:

> [i]t shall be an unfair labor practice for a labor organization or its agents to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is (A) forcing or requiring any employer . . . to join any labor organization or to enter into any agreement which is prohibited by section 8(e) of this section; (B) forcing or requiring any person to cease using, selling, handling, transporting or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person. . . .

29 U.S.C. § 158(b)(4)(ii)(A)-(B).

Petitioner contends that the Union's attempts to enforce Article XXII, a provision prohibited by Section 8(e) of the Act, through arbitration and a lawsuit constitute violations of these provisions of the Act.  Petitioner has demonstrated that she has reasonable cause to believe that Article XXII violates Section 8(e) of the Act, and that the Union has further violated the Act through its efforts to enforce Article XXII.  By contrast, the Union has not proffered any sound arguments to support its claim that Article XXII is a work preservation, as compared to a union signatory, provision.

### C.      Just and Proper

The determination as to whether the granting of the injunction is "just and proper" presents a closer question. "The Second Circuit and district courts within this Circuit have outlined numerous factors to be considered in determining whether the relief requested by the Board is 'just and proper,' none of which appear to be dispositive." *Ahearn v. Freight Drivers, Helpers, Dockmen, & Allied Workers Local Union No. 375*, No. 92-CV-756S, 1992 WL 373537, at *6 (W.D.N.Y. Nov. 25, 1992).

"In determining whether injunctive relief is just and proper, the courts are required to consider whether such injunction will further public interest in maintaining respect for the law and promptly eliminate obstructions to free flow of commerce." *Id.* (citing *DeProspero v. House of Good Samaritan*, 474 F. Supp. 552 (N.D.N.Y. 1978)).

"Additional considerations in determining whether injunctive relief is just and proper include a determination as to whether such injunction will preserve the status quo, and the potential for irreparable injury.  Finally, the district court must factor in the purpose of the Act and decide whether the failure to issue the injunction, in effect, will nullify or render meaningless the Board's final determination." *Id.* (citations omitted).

Petitioner requests that this Court issue an Order enjoining the Union from giving force and effect to Article XXII through pursuit of its grievance by arbitration. (Dkt. 15 at 7-8).  Petitioner contends that pursuit of the grievance reaffirms the allegedly unlawful provision, and results in a further violation of the Act. (Dkt. 13-4 at 3-4).  In addition, Petitioner argues that the Union's separate lawsuit in this Court against the Employer

seeking to compel arbitration and enjoin the Employer and JLL from subcontracting is a further violation of Sections 8(b)(4)(ii)(A) and (B) of the Act. (*Id.* at 3).

"Whether the employer, as a result of Union pressure, must cease doing business with another employer, or must submit to compulsory arbitration, the Union is still implementing an allegedly void and unenforceable clause in a contract. And the harm can be just as severe, and the burden on interstate commerce, alleged by the Board to exist, just as heavy even though all the Union seeks is to arbitrate a void clause." *McLeod*, 234 F. Supp. at 837-38; *see also Blyer*, 261 F. Supp. 2d at 170 (where the Board argued that the CBA provision at issue itself was a violation of Section 8(e), the Union's attempt to enforce the potentially illegal contract provision was also an unfair labor practice, and the court enjoined the Union from pursuing arbitration); *Danielson*, 521 F.2d at 755 ("[W]here a clause is found to violate § 8(e) 'it is unenforceable and void, it should not and cannot form the basis for any arbitration award, irrespective of the holding of the arbitrator, and the mere submission of the controversy to arbitration would compound the statutory violation.'").

"Furthermore, if the arbitration proceeds and the Board holds the clause void, the parties will not only have engaged in an 'exercise in futility' but will have compounded a statutory violation." *McLeod*, 234 F. Supp. at 842.

Here, it appears that injury would result to either side depending on the nature of injunctive relief granted by the Court, yet it also appears that those injuries would be primarily monetary in nature.

In terms of the status quo, regardless of the relief granted by the Court, there will be a change in the status quo. In other words, if the Employer moves forward with its contract with JLL, the status quo will change, and yet, if the Employer is prevented from moving forward with its contract with JLL, the status quo will also change.

As discussed above, there is a likelihood that the Board will find that Article XXII violates Section 8(e) of the Act, and therefore, the pursuit of arbitration would only compound the potential statutory violation. Petitioner's complaint concerning the Union's alleged unfair labor practices is already before an ALJ. As a result, the Board is currently examining the validity of Article XXII under the requirements of the Act. "[W]here the issue between the parties is the validity of a contract provision under the requirements of the NLRA, the Board possesses greater expertise to decide the question than does an arbitrator." *Danielson*, 521 F.2d at 755.

Moreover, the Union's continued demands to enforce Article XXII may limit the the Employer's ability to realize the full potential of its subcontracting agreement with JLL. If, for example, the matter were to go to arbitration, the arbitrator could potentially grant the Union's request to enjoin the Employer from entering into or continuing its subcontracting agreement with JLL pending the arbitrator's decision.

In the last analysis, an injunction would further the public interest of maintaining respect for the law and eliminate obstructions to the free flow of commerce. As a result, the Court finds that issuance of the preliminary injunction requested by Petitioner is just and proper.

## IV.    CONCLUSION

Petitioner has demonstrated that she has reasonable cause to believe that the unfair labor practice has occurred.  The Court also finds that injunctive relief is just and proper. Accordingly, the Union, its officers, agents, representatives, servants, employees, attorneys, and all members and persons acting in concert or participation with them, are hereby enjoined and restrained from giving force or effect to Article XXII of the current collective bargaining agreement between the Employer and the Union, or threatening to give force or effect to Article XXII, through the pursuit of arbitration, by lawsuit, or in any other manner, with the object of forcing the Employer to cease doing business with JLL or any other person, pending the final disposition of the matter before the Board.  In addition, the Union is directed to comply with the following:

1.    Post copies of this Decision and Order at the Employer's facility located in Rochester, New York, and at all locations where union notices to employees and members are customarily posted; maintain such postings during the Board's administrative proceeding, free from all obstructions and defacements; all bargaining unit employees shall have free and unrestricted access to said postings; and the Union shall grant reasonable access to agents of the Board to its Rochester, New York, facility to monitor compliance with this posting requirement; and

2.    Within twenty (20) days of the issuance of this Decision and Order, file with this Court a sworn affidavit from a responsible official of the Union, stating with specificity how the Union has complied with the terms of this Decision and Order, including the locations of the documents required to be posted.

- 13 -

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:   November 17, 2014
         Rochester, New York